UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNIVERSITY SPINE CENTER o/a/o
MARIA C.,

                Plaintiff,

v.

HORIZON BLUE CROSS BLUE
SHIELD OF NEW JERSEY and
CAREFIRST OF MARYLAND,

                Defendants.

Civ. No. 16-8222 (KM)(MAH)

OPINION

This is an action under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* University Spine Center ("University"), an out-of-network provider, billed its patient for some $374,000 in services; defendant CareFirst of Maryland ("CareFirst"), as claims administrator, paid out approximately $9,100. Seeking to recover the adjusted balance from CareFirst, University sues as assignee of its patient, Maria C.

CareFirst moves under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief may be granted. Primarily, CareFirst contends that the relevant health benefits plan contains a no-assignment clause that bars University from suing as the assignee of its patient.[1]

For the reasons stated herein, I agree with CareFirst, and with cases decided in this District addressing the same issue, and I will grant the motion to dismiss.

---

[1] The motion may be viewed in the alternative as a jurisdictional one, asserting lack of standing under Fed. R. Civ. P. 12(b)(1). There seems to be no doubt, however, that University has alleged a concrete financial injury in the Article III sense. Its right, or not, to sue is a matter of contract. The distinction makes no difference for purposes of this motion.

1

I.  **Background**[2]

A.  **Procedural History**

The Complaint was originally filed in New Jersey Superior Court, Passaic County, on September 26, 2016. It essentially seeks reimbursement for a claim denied under a health insurance plan. It contains one count of state-law breach of contract, and three ERISA-related counts.

On November 3, 2016, the defendants filed a notice of removal to federal court. (ECF no. 1 at 1) The plan, they stated, is covered by ERISA. *See* 29 U.S.C. § 1002(1). Hence all related claims are preempted by federal law, *see* 29 U.S.C. § 1144(a), and this Court has jurisdiction, *see* 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

On January 13, 2017, the defendants, CareFirst and Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), filed a motion (ECF no. 9) to dismiss the Complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). University filed a response. (ECF no. 11) The defendants filed a reply. (ECF no. 12) Although defendants sought time to decide whether to amend their Complaint in response to the motion, they have now stated definitively that they do not seek to amend the Complaint. (ECF nos. 19, 20) The motion is now fully briefed and ripe for decision.

The parties agree that the case is governed by ERISA. Accordingly, University has agreed to voluntarily dismiss Count 1 of the Complaint, a state law breach of contract claim. (*See* Pl. Brf. 1.) In addition, the parties have by

---

[2] Certain key record items are abbreviated as follows:

Cplt. = Complaint, ECF no. 1 at 11
Def. Brf. = Brief of defendants in support of motion to dismiss, ECF no. 9-4
Pl. Brf. = Brief of plaintiff in opposition to motion to dismiss, ECF no. 11
Def. Reply = Reply Brief of defendants, ECF no. 12
Assignment of Benefits = Cplt. Ex. B, ECF no. 1 at 44
Benefit Description = Benefit Description of Erickson Plan for 2015, ECF no. 9-2, and 2016, ECF no. 9-3
Anti-Assignment Clause = Benefit Description p. 32 ¶H

2

stipulation dismissed defendant Horizon from the case. (ECF nos. 16, 17) What remains, then, is a motion by Carefirst, the remaining defendant, to dismiss Counts 2, 3, and 4, the remaining counts of the Complaint.

**B.    The Complaint**

The allegations of the complaint (ECF no. 1 at 11, cited as "Cplt."), taken as true for purposes of this motion, *see* Section II, *infra*, are as follows.

University provided medical services to Maria C. between September 10, 2015, and February 1, 2016. The services consisted of spinal surgery and related matters. (Cplt. ¶ 4 & Ex. A)

University obtained what it calls an Assignment of Benefits[3] from Maria C. The operative language on the first page of the Exhibit reads as follows:

<u>**Assignment and Release**</u>

I, the undersigned, certify that I (or my dependent/s) have insurance coverage with BC/BS and assign directly to University Spine Center, all insurance benefits, if any, otherwise payable to me for the services rendered. I understand that I am financially responsible for all charges, whether or not paid by insurance. I hereby authorize the doctor to release all information necessary to secure the payment of benefits. I authorize the use of this signature on all insurance submissions.

**Responsible Party Signature**: <u>[redacted]</u> **Relationship**: <u>self</u>
**Date**: <u>9/10/15</u>

(Assignment of Benefits, ECF no. 1 at 45)

The operative language on the following page of the Exhibit (actually designated as page 6 in the original) reads as follows:

I, [redacted], understand that I am utilizing my out of network benefits and that my insurance company may send to me, the payment(s) for services by University Spine Center in my treatment. I also understand

---

3    The Assignment of Benefits is actually titled "Assignment and Release." CareFirst reserves the right to contest that this is an effective assignment of benefits, but for purposes of the current motion it is treated as such. Obviously, if there were no effective assignment of benefits in the first place, it would not be necessary to consider the effect of any anti-assignment provision.

3

that by paying a partial payment at the time services are rendered, in no way means the doctors are in network. I understand that the partial payment collected will be posted to my account as a payment towards my co/insurance and or deductible. I agree to sign over the full amount to University Spine Center within thirty days of receipt of the same. If I fail to do so, I understand that in addition to being responsible for the full amount charged by University Spine Center for said services, I will be responsible for any charge incurred by him in pursuing and collecting from me.

I authorize payment of medical benefits for service performed by University Spine Center to be sent directly to:

University Spine Center

    [address]

[Signature Redacted]

(Assignment of Benefits, ECF no. 1 at 46)

At that time, Maria C. had health coverage through the Erickson Plan, a self-funded health benefits plan sponsored and administered by her employer. The Erickson Plan was an employee welfare benefit plan governed by ERISA. The plan's claims administrator was defendant CareFirst. (*See* Cplt. ¶¶ 3, 13.) The terms of the Erickson Plan are set forth in the 2015 and 2016 Benefit Descriptions. (ECF nos. 9-2, 9-3)

As stated above, University sues pursuant to an Assignment of Benefits. In the 2015 and 2016 Benefit Descriptions of the Erickson Plan, however, there are identical Anti-Assignment Clauses:

> H. **Assignment of Benefits**
>
> A Member may not assign his or her right to receive benefits or benefit payments under this Evidence of Coverage to another person or entity except for routine assignment of benefit payments to a Preferred Health Care Provider[4]/Contracting Pharmacy rendering Covered Services.

(Anti-Assignment Clause, ECF nos. 9-2, 9-3 at 33)

---

[4]     *I.e.*, an in-network provider, which would be paid directly by the Plan. *See* 2015 & 2016 Benefit Descriptions, ECF nos. 9-2, 9-3 at 10 (Definitions).

University is an out-of-network provider *vis-à-vis* the Erickson Plan. As assignee, University submitted a claim form for the services it provided to Maria C., requesting reimbursement in the amount of $374,419.00. (Cplt. ¶ 8 & Ex. C) The amounts paid out on the claim totaled $9,134.53. (Cplt. ¶ 9 & Ex. D) The total underpayment, net of adjustments for deductions, copayments, and coinsurance, was $273,987.96. (Cplt. ¶ 14) University exhausted the administrative appeals process. (Cplt. ¶ 10 & Ex. E)

Count 1, now voluntarily dismissed, asserted a state law breach of contract claim.

Count 2 asserts a claim of failure to make all payments pursuant to member's plan under ERISA § 502(a)(1), 29 U.S.C. § 1132(a).

Count 3 asserts an ERISA claim of breach of fiduciary duty or co-fiduciary duty under 29 U.S.C. §§ 1132(a)(3)(B), 1104(a)(1), and 1105(a).

Count 4 asserts an ERISA-related claim of failure to establish or maintain reasonable claims procedures under 28 C.F.R. § 2560.503-1.

## II. Standard on a Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the

5

'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

A court considering a Rule 12(b)(6) motion is confined to the allegations of the complaint, with certain exceptions:

> "Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)."

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). *See also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.' ") (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

University brings its claim as assignee, and attaches the written Assignment of Benefits to its complaint. (ECF no. 1 at 44) The very foundation

of University's Claim is the Erickson Plan. Thus the defendants have permissibly attached the Plan's Benefit Descriptions (ECF nos. 9-2, 9-3), containing the Anti-Assignment clause (*id.* at 33), to their papers. No party contests the authenticity of these documents. They are properly considered on this Rule 12(b)(6) motion.

## III. Analysis

University sues on behalf of the Plan beneficiary, Maria C., pursuant to a written Assignment of Benefits.[5] CareFirst responds that a person cannot assign more than she has, *Selective Ins. Co. of America v. Hudson East Pain Management Osteopathic Medicine,* 210 N.J. 597, 607 (2012), and that what Marie C. has is an individual, non-assignable right to payment. An Anti-Assignment Clause in the Erickson Plan bars University from suing as assignee.

With exceptions not relevant here, the operative document provides that "[a] Member may not assign his or her right to receive benefits or benefit payments under this Evidence of Coverage to another person or entity . . . . (Anti-Assignment Clause, ECF nos. 9-2, 9-3 at 33) That is clear enough. The only issue is whether such a clause is legally effective and enforceable.

Considerable authority in this District supports CareFirst's view that such an anti-assignment clause is effective. Thus, for example, in *Cohen v. Independence Blue Cross,* 820 F. Supp. 2d 594 (D.N.J. 2011), a doctor sought reimbursement pursuant to an assignment of benefits. The ERISA plan in question, however, had an anti-assignment clause: "The right of a Covered

---

[5] There is no dispute that any ERISA cause of action belongs to Maria C. The civil enforcement provision, 29 U.S.C. § 1132(a), confers a cause of action on a plan "participant," "beneficiary," or "fiduciary." The statute does not grant such a cause of action to a health care provider. *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir. 2004). It is now settled, however, that a provider may obtain a derivative right to sue *via* a valid assignment from a plan participant. *N.J. Brain & Spine Ctr. v. Aetna, Inc.,* 801 F.3d 369, 372 (3d Cir. 2015); *American Chiropractic Ass'n v. American Specialty Health Inc.,* 625 F. App'x 169, 175 (3d Cir. 2015); *CardioNet, Inc. v. Cigna Health Corp.,* 751 F.3d 165, 176 n.10 (3d Cir. 2014).

7

Person to receive benefit payments under this coverage is personal to the Covered Person and is not assignable in whole or in part to any person, Hospital, or other entity nor may benefits of this coverage be transferred, either before or after Covered Services are rendered ..." *Id.* at 604. ERISA, Judge Wolfson reasoned, did not preempt the assignment issue, instead leaving it to the negotiations of the contracting parties. *Id.* at 605.[6] She found the language of the anti-assignment clause to be unambiguous, and enforced it. *See also Kaul v. Horizon Blue Cross Blue Shield of New Jersey*, 2016 WL 4071953 (D.N.J. Jul. 29, 2016) (Cecchi, J.); *Advanced Orthopedics and Sports Medicine v. Blue Cross Blue Shield of Massachusetts*, 2015 WL 4430488,*4 (D.N.J. Jul. 20, 2015) (Wolfson, J.).

In response, University offers a citation to *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992), *overruled on other grounds, Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012). *Hermann* held that an anti-assignment clause, even if generally applicable, should not apply to an assignee who "is the provider of the very services which the plan is maintained to furnish." *Id.* at 575.

That 25-year-old case is not binding and has otherwise been limited.[7] I

---

[6] Citing, *e.g., Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294–96 (11th Cir. 2004) ("Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); *City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ( "Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1464–65 (10th Cir. 1995) ("ERISA's silence on the issue of the assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1478 (9th Cir.1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions.").

[7] University scrupulously points out that the Fifth Circuit later clarified that *Hermann* did not state a holding applicable under all circumstances, but rather rested on the wording of that particular anti-assignment clause. Pl. Brf. 4 n.2 (citing *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352 (5th Cir. 2002)). Still, the policy argument remains, and it has some force.

8

must say, however, that I see what must have been concerning that court. Medical bills can be ruinous; many a patient has no hope of paying them without insurance, and may be judgment proof; and many a patient likewise lacks the resources or incentive to fight an insurance company. It makes a certain amount of sense to recognize that the provider is often the real party in interest, and should be empowered to contest an insurer's refusal of payment.

The ERISA statute, however, contains no such provision, and the parties are therefore relegated to the law of contracts and assignments. The Anti-Assignment clause, whatever its policy merits, is a bargained-for part of the Plan.[8] New Jersey, for its part, has declined to invalidate anti-assignment clauses as a policy matter. *Kaul*, 2016 WL 4071953, at *2 (citing *Advanced Orthopedics*, 2015 WL 4430488, at *5 (D.N.J. July 20, 2015); *Somerset Orthopedic Assocs. v. Horizon Blue Cross & Blue Shield of N.J.*, 345 N.J. Super. 410, 423 (N.J. Super. App. Div. 2001) (holding "the anti-assignment clause in Horizon's subscriber contracts is valid and enforceable to prevent assignment by subscribers of policy benefit payments to non-participating medical providers without Horizon's consent")). Generalized policy considerations are insufficient to move a court—at least this trial-level court—to set aside the applicable precedent.

Finally, University argues that CareFirst has waived the Anti-Assignment clause. University does not allege that CareFirst dealt with it, or paid it, directly. Indeed, the EOBs attached to the Complaint seem to indicate direct payment to Maria C. *See* Cplt. ¶ 9 (asserting that Defendant "paid $9,134.53");

---

[8] To the extent, at least, that a subsection at page 32 of a 127-page Benefits Description can be said to be the subject of bargaining. It is perhaps with unintentional irony that CareFirst suggests the Assignment of Benefits itself is insufficiently conspicuous: "Movants do not concede that this one-sentence 'assignment' buried within what appears to be a much broader form of at least six-pages constitutes a valid 'assignment of benefits' as defined by applicable law." Def. Brf. 4.

*id.* Ex. D (EOB forms).[9] The waiver argument seems to be simply that CareFirst sent duplicates of the EOBs to University. That fact lacks any great significance, in my view, but at any rate it is not alleged in the Complaint.

Such a waiver argument, unsupported by specific factual allegations, has been rejected by both Judge Cecchi and Judge Wolfson on Rule 12 motions. *See Kaul,* 2016 WL 4071953, at *3 (rejecting waiver argument, at least absent any allegation that direct payment to a provider occurred but was not authorized by the Plan); *Advanced Orthopedics,* 2015 WL 4430488, at *7–*8. It is hornbook law, those cases point out, that waiver entails intentional relinquishment of a known right. Waiver is a multi-hued concept, and it is possible to quibble about the particulars. But no factual allegation indicative of such relinquishment, intentional or not, appears in this Complaint.[10]

## CONCLUSION

For the foregoing reasons, the motion (ECF no. 9) under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim is **GRANTED**. Because this is a first dismissal, it is without prejudice to the submission, within 30 days, of a properly supported motion to amend the Complaint. In that connection, counsel are directed to newly-amended Local Rule 15.1.

An appropriate Order is filed herewith. The clerk shall close the file.

Dated: June 12, 2017

							_____
							**Kevin McNulty**
							**United States District Judge**

---

[9] (ECF no. 1 at 58–66). University is identified as the provider, but nowhere as the payee. The payee name after "Pay to the Order Of" on the checks is redacted, indicating presumably that it is the name of Maria C.

[10] There being no basis for University to sue, I do not reach CareFirst's remaining contentions.